UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:09-CV-907 (CEJ) ) |
| AGR CONSTRUCTION CO., et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion for permanent injunction to compel defendants to submit all reports and contributions as required under the terms of the parties' collective bargaining agreement. Defendants filed no opposition to the motion, and the time for doing so has expired.

### I. Background

Plaintiffs are the employee benefit plans (the Welfare, Pension, Vacation, Training and Apprentice, and Site Advancement Funds (collectively "the Funds")) for Local Unions Nos. 42, 53, and 110, Laborers International Union of North America, (the Union), the trustees for the plans, as well as the Union itself. Defendants AGR Construction Company and ABDF Construction, LC, are a single employer.

On October 8, 2004, Amy Kotraba executed an agreement on defendants' behalf to be bound by a collective agreement with the Union, effective from March 1, 2004 through March 1, 2009. The collective bargaining agreement obligates defendants to submit reports and make contributions to the Welfare Fund (§ 5.03), Pension Fund (§ 5.04), Vacation Fund (§ 5.05), Training and Apprentice Fund (§ 5.06), and Site Advancement Fund (§ 5.07). Additionally, defendants agreed "to be bound by all subsequent agreements, renewals, changes or extensions thereto made by the original

parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date." (Doc. #5-5). Under the collective bargaining agreement, defendants are subject to "liquidated damages [in the amount] equal to twenty (20%) [for] delinquent contributions." (§ 5.10).

On January 6, 2006 and September 19, 2007, plaintiffs filed complaints against defendants for delinquent contributions. See Greater St. Louis Constr. Laborers Welfare v. Fund, et al., v. AGR Constr., et al., No. 4:06-cv-27 (HEA); Greater St. Louis Constr. Laborers Welfare v. Fund, et al., v. AGR Constr., et al., No. 4:07-cv-1635 (DJS).

On September 9, 2008, the parties filed a signed Stipulation for Entry of Consent Judgment in Greater St. Louis Constr. Laborers Welfare v. Fund, et al., v. AGR Constr., et al., No. 4:06-cv-27(HEA), wherein the parties agreed that:

> Judgment is entered in favor of Plaintiffs and against Defendants AGR Construction Company and ABDF Construction, LC, jointly and severally, for the work performed by employees Ryan Rader and Robert Thomas in the amount of $9,725.66, consisting of $7,210.59 as and for delinquent fringe benefit contributions, $1,442.16 as and for liquidated damages and $1,072.91 as and for interest. The amount of this consent judgment is calculated on the basis of a payroll examination of Defendants' books and records for the period of October 8, 2004 to December 31, 2005. . . .
>
> This consent judgment in the amount of $9,725.66 is in addition to the partial amount of $20,651.79 which the Plaintiffs were granted in summary judgment in the Court's Order of August 23, 2007. Accordingly, judgment will be entered in favor of Plaintiffs in the total combined amount $30,377.45 against Defendants AGR Construction Company and ABDF Construction, LC, jointly and severally.

(Doc. #49, at 1-2) (emphasis added).

Likewise, on September 10, 2008, the parties filed a signed Stipulation for Entry of Consent Judgment in Greater St. Louis Constr. Laborers Welfare v. Fund, et al., v. AGR Constr., et al., No. 4:07-cv-1635 (DJS), in favor of plaintiffs and against

defendants "in the amount of $22,102.26 [for delinquent fringe contributions] <u>for the period of January 1, 2006 through November 30, 2007</u>."  (Doc. #25) (emphasis added).  The court issued this consent judgment on October 30, 2008.  (Doc. #28 in <u>Greater St. Louis Constr. Laborers Welfare v. Fund, et al., v. AGR Constr., et al.</u>, No. 4:07-cv-1635 (DJS)).

On March 1, 2009, the original parties to the collective bargaining agreement negotiated a successor agreement, effective from March 1, 2009 to March 1, 2014. (Doc. #14-2, at 2, para. 4; #5-6, at 47).  Defendants did not submit a notice of termination with respect to the 2009-2014 agreement.

On June 10, 2009, plaintiffs filed the instant action against defendants for failure to submit reports and contributions for the period from December 1, 2007 to date as required by the collective bargaining agreement.  After defendants filed their answer, plaintiffs filed their motion for permanent injunction on July 27, 2009.

## II. Discussion

Section 515 of the Employment Retirement Income Security Act of 1974 (ERISA) provides that, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms of such plan or such agreement."  29 U.S.C. § 1145.  Pursuant to section 502 of ERISA, a fiduciary may bring a civil action "to enjoin any act or practice which violates any provision of [the] title or the terms of the plan[.]"  29 U.S.C. § 1132 (a)(3).  Section 502(g) states that:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
>
> (A) the unpaid contributions,

> > (B) interest on the unpaid contributions,
> >
> > (C) an amount equal to the greater of--
> >
> > > (i) interest on the unpaid contributions, or
> > >
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> >
> > (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> >
> > (E) <u>such other legal or equitable relief as the court deems appropriate</u>.

29 U.S.C. § 1132(g)(2)(E) (emphasis added).

"The standard for issuing a preliminary or permanent injunction is essentially the same, excepting one key difference. A permanent injunction requires the moving party to show actual success on the merits, rather than the fair chance of prevailing on the merits required for a standard preliminary injunction." <u>Oglala Sioux Tribe v. C & W Enterprises, Inc.</u>, 542 F.3d 224, 229 (8th Cir. 2008). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest." <u>Id.</u> (citing <u>Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds</u>, 530 F.3d 724, 729 n.3 (8th Cir. 2008); <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981)).

### A. Actual Success on the Merits

Plaintiffs clearly meet the threshold requirement. In their previously-filed actions, plaintiff alleged that defendants failed to submit reports and contributions.

Then, on September 9 and 10, 2008, the parties filed a signed Stipulation for Consent Judgment, wherein defendants agreed to pay delinquent contributions as well as liquidated damages and interest for the period from October 8, 2004 to December 31, 2005 and January 1, 2006 to November 30, 2007. As such, defendant stipulated to their liability in both actions. Thus, the Court finds that plaintiffs have demonstrated actual success on the merits.

### B. Irreparable Harm

Additionally, plaintiffs have established that the Funds and its participants will suffer irreparable harm unless the Court issues a permanent injunction. According to the supplemental affidavit of Bernard Difani, defendants have only made timely contributions for November 2004. (Doc. #14-2, at 2, para. 4). The signed Stipulations for Entry of Consent Judgment indicate that defendants have a history of failing to make fringe benefit contributions. Moreover, plaintiffs claim that "[d]efendants' consistent and serious delinquency can cause defendants' employees to lose their health and welfare benefits and [possibly] fail to qualify for such benefits." (Doc. #14, at 4). "Even if the contributions for the Welfare Fund are ultimately received from defendants, [plaintiffs contend that defendants'] employees nevertheless may have experienced lapses in their health insurance coverage which could cause the employees and their [dependents] to be denied medical treatment." (Doc. #14, at 4-5). Plaintiffs also contend that defendants' delinquent contributions have reduced the Funds' investment income. (Doc. #14, at 3, 5). Based on the foregoing, the Court believes that the Funds and its participants will suffer irreparable harm in the absence of injunctive relief.

### C. Balance of the Harms

Upon review of the record, the balance of harms favors plaintiffs. Because a

permanent injunction will only require defendants to submit reports and make contribution as required under the terms of the collective bargaining agreement, defendants will suffer no harm. Otherwise, the Funds and its participants will continue to suffer irreparable harm. See Zorn v. K.C. Cmty Constr. Co., Inc., 812 F.Supp. 948, 952 (W.D.Mo. 1992) (holding that "[i]f injunctive relief were denied, the plaintiffs would continue to suffer irreparable harm in direct proportion to the amount of hours worked by the defendant under the . . . [a]greement each month[, while] the only 'harm' to the defendant [is] that it abide by the terms of the agreement it has made.").

### D. The Public Interest

Finally, plaintiffs cite to Zorn to support their contention that a permanent injunction will serve the public interest. The Court believes that Zorn is persuasive and agrees that:

> It is clearly in the public interest for a federal court to protect employee benefit plans and their participants and beneficiaries by ordering a company to pay its delinquent contributions and to avoid future delinquencies. The role of trustees of employee benefit funds is an extremely difficult one. They are constantly in danger of being sued for breach of their fiduciary responsibilities, an important one of which is keeping employers current in their contributions. Indeed, this function is obviously one of the most important fiduciary duties because it bears directly on a plan's solvency and ability to survive.

812 F.Supp. at 953.

Therefore, based on the foregoing, the Court concludes that the record warrants the issuance of permanent injunction, compelling defendants to adhere to the terms of the collective bargaining agreement.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a permanent injunction to compel defendants to submit all reports and make timely contributions as they come

due under the terms of the collective bargaining agreement to the expiration of the 2000-2014 collective bargaining agreement as well as any successor agreements [Doc. #13] is **granted**.

                                                      _____
                                                      CAROL E. JACKSON
                                                      UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2010.